*Muriel A. Masarek,* for appellee.

### 35314. MULLIGAN v. THE STATE.*

JORDAN, Justice.

Appellant-defendant, Joseph Holcombe Mulligan, was co-indicted with Timothy Andrew Helms in Muscogee County in August of 1974 for the murders of Patrick A. Doe and Marian Jones Miller, and for theft by taking. Following a jury trial, the appellant was found guilty on all counts and sentenced to death for each murder and to thirty days for theft by taking. The case is presently before this court on appeal and mandatory review of the death sentence.

### I. The Evidence.

A summary of the evidence is as follows: The appellant became friends with Timothy A. Helms, his co-indictee, while the latter was stationed with the United States Marine Corps in Beaufort, South Carolina. On April 12, 1974, the appellant talked Helms into driving him to Columbus, Georgia, by offering Helms a fee of $1,000. During the drive, the appellant told Helms that he was going to Columbus, to "ice somebody." In accordance with the appellant's suggestion, the two spent the night of April 12-13 at a hotel in Columbus registered under false names. The next day, the appellant and Helms visited with Patrick A. Doe, an army captain at Fort Benning and the appellant's brother-in-law. In the afternoon, they joined Captain Doe in washing the latter's car. During this activity, the appellant and Captain Doe argued.

That evening, with the appellant and Helms sitting in the back seat (the appellant seated directly behind the driver's seat), Captain Doe drove to the house of Marian Jones Miller, the captain's girlfriend, to pick her up for a party. When Captain Doe left the car to get Ms. Miller, the appellant announced to Helms that he would "do it in the next two blocks."

Following Captain Doe's return to the driver's seat and shortly after the car had begun to move again, the

*For Addendum to Mulligan v. State, see page 881, post.

appellant held a .38 special automatic in a .45 frame, which the appellant had earlier borrowed from the captain, to the captain's head. The appellant fired once. He then ordered Helms to grab the now-abandoned steering wheel, but Helms was unable to do so before the car had struck both a stop sign and a mail box. When Ms. Miller, who was seated in the front seat next to Captain Doe, cried out for help, the appellant placed the gun across Helms' back and shot Ms. Miller as he told her to be silent.

After Helms finally brought the car to a stop, the appellant and Helms towelled it off for fingerprints and then ran. As they fled the scene of the crime, Helms threw away his bloody shirt and Captain Doe's wallet which he had removed from the body of Captain Doe at the appellant's instruction. Similarly, the appellant threw Captain Doe's gun into some bushes and his own clothes over a bridge.

The autopsy performed on Captain Doe showed that the bullet had entered the left eye, traveled through the brain, and exited the right temple. The autopsy of Ms. Miller revealed that she had been shot four times: in the left forearm, the left shoulder, the right upper arm, and the midportion of the back of the skull, with the exit wound of the last listed shot being the right eye. The cause of death for both victims was laceration and hemorrhage of the brain and cerebral trauma.

Several .38 shell casings were found in the captain's car along with a bullet. The State Crime Laboratory test indicated that the shell casings and the bullet found in Captain Doe's car had been fired by Captain Doe's .38 pistol. Finally, a latent fingerprint which had been lifted from the left door window of Captain Doe's car was found to match a rolled print of the appellant's left middle finger.

The evidence also revealed that Captain Doe had filed a divorce action against the appellant's sister and that Captain Doe had told the appellant on the day of the captain's death, that his divorce from the appellant's sister would be final soon.

This court holds that the evidence in support of the verdicts is legally sufficient since the evidence more than supports a reasonable jury's finding that the appellant

was guilty beyond a reasonable doubt of each and every crime charged.

## II. Enumerations of Error.

1. The appellant first enumerates as error the trial court's failure to charge the jury that they could consider mitigating circumstances and recommend a life sentence even though they found the existence of a statutory aggravating circumstance beyond a reasonable doubt.

In *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977), this court noted that the trial court has a duty to make clear to the jury that "our system for deciding whether a death sentence is to be given requires the jury to consider two issues in the sentencing phase. First, the jury must consider if the state has proven the existence of at least one statutory aggravating circumstance (Code Ann. § 27-2534.1 (b) (1-10)), beyond a reasonable doubt. Second, if one of these circumstances is found, the jury must then consider the mitigating and aggravating circumstances relevant to the defendant and determine whether the death penalty is appropriate in this case." Id., at 146-147.

We have carefully reviewed the trial judge's charge [see T. 269-272] to the jury during the sentencing phase of the appellant's trial and conclude that the trial judge fully met his duty of making clear to the jury that they could sentence the appellant, not to death, but to life imprisonment, even though they found the existence of a statutory aggravating circumstance beyond a reasonable doubt. The appellant's first enumeration of error is without merit.

2. The appellant also enumerates as error the trial court's failure to hold the Georgia Death Penalty Procedure (Code Ann. § 27-2534.1) unconstitutional as a cruel and unusual mechanism for the award of the death penalty in violation of the Eighth Amendment to the United States Constitution. Specifically, the appellant argues that an arbitrary and capricious system for awarding the death penalty can be avoided only when the trial judge, and not the jury, decides whether the sentence shall be death or life in prison.

The United States Supreme Court, in Gregg v. Georgia, 428 U. S. 153 (1976), held that the Georgia Death

Penalty procedure effectively obviated that court's concern that the death penalty not be imposed in an arbitrary and capricious manner, and specifically noted that "while some *jury* discretion still exists, 'the discretion to be exercised is controlled by clear and objective standards so as to produce non-discriminatory appli-cation.' " Id., at 197, 198.

Further, that court noted in the same case that *"Jury* sentencing has been considered desirable in capital cases in order 'to maintain a link between contemporary community values and the penal system — a link without which the determination of punishment could hardly reflect "the evolving standards of decency that mark the progress of a maturing society." ' " Id., at 190.

The appellant's second enumeration of error is without merit.

3. The appellant complains that the verdict is not supported by the evidence in the specific sense that the appellant was convicted on the basis of the uncorroborated testimony of a co-conspirator.

Code Ann. § 38-121 provides that, while the testimony of a single witness is generally sufficient to establish a fact, in any case of a felony where the only witness is an accomplice, corroborating circumstances must also be proven.

"Under 38-121, testimony which concerns the identity of other participants must be corroborated by some means *independent* of the testimony of the accomplice. One who is guilty of a crime in which he participated will always be able to relate the facts of the case and if the corroboration goes *only* to the truth of that history, without identifying the person accused, it is really no corroboration at all." *Birt v. State,* 236 Ga. 815, 824 (225 SE2d 248) (1976). (Emphasis supplied.)

Accordingly, under Code Ann. § 38-121, evidence must be presented at trial which corroborates the accomplice's testimony both as to the history of the felony and as to the identification of the accused as a participant in the crime, and, as regards the latter corroboration, the evidence must originate from an independent source.

Finally, the standard of review regarding corroboration is as follows: "It is not required that the cor-

roboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular [and] . . . slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict." *Birt,* supra, at 826.

Having thoroughly reviewed the present appellate record, we hold that the testimony of Timothy A. Helms, the appellant's accomplice, regarding the history of the appellant's crimes, is amply corroborated by other evidence. Further, Helms' testimony as to appellant's identity and participation in the present crimes is independently corroborated by the testimony of three witnesses who saw the appellant in the company of Captain Doe on the afternoon and evening of the day of the shooting, and, by the appellant's latent fingerprint which was lifted from the left door window of the victim's car. Cf. *Birt,* supra, at 825.

4. Finally, the appellant complains that the trial court violated Code Ann. § 27-2534.1 by not presenting to the jury, in writing, a copy of the court's *entire* charge regarding sentencing.

Code Ann. § 27-2534.1 (c) provides as follows: "The *statutory instructions* as determined by the trial judge to be warranted by the evidence shall be given in charge and in writing to the jury for its deliberation."

In the present case, the trial court gave to the jury, for its consideration as to punishment, a written list of the statutory aggravating circumstances which the trial court had orally charged. Code Ann. § 27-2534.1 (c) demands nothing more. *Spraggins v. State,* 243 Ga. 73, 75 (252 SE2d 465) (1979).

The appellant's final enumeration of error is without merit.

### III. Death Sentence Review.

In recommending the death penalty as to Count 1 of the indictment, which charged appellant with the murder of Patrick A. Doe, the jury found the following aggravating circumstance:

"The offense of murder was outrageously and

wantonly vile, horrible and inhuman." Code Ann. § 27-2534.1(b)(7).

While partial findings of this particular aggravating circumstance have been affirmed on appeal, in this case the judge did not charge Code Ann. § 27-2534.1 (b)(7) as an aggravating circumstance as to Count 1 of the indictment. *Godfrey v. State,* 243 Ga. 302 (253 SE2d 710) (1979); *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979). Rather, the trial court charged that the jury could only consider as an aggravating circumstance that the "offender committed the offense of murder for himself or another for the purpose of receiving money or any other thing of monetary value." Code Ann. § 27-2534.1(b)(4).

As to Count 1 of the indictment we conclude that the evidence does not support a finding of Code Ann. § 27-2534.1(b)(7) or (4) as an aggravating circumstance. *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976); see *Banks v. State,* 237 Ga. 325 (227 SE2d 380) (1976); *Holton v. State,* 243 Ga. 312 (253 SE2d 736) (1979). Therefore, as to Count 1 of the indictment, the sentence of death is vacated and the case remanded with direction that a sentence of life imprisonment be imposed.

In recommending the death penalty as to Count 2, the murder of Ms. Miller, the jury found the following statutory aggravating circumstances:

(1) The offense of murder was committed while the offender was engaged in the commission of another capital felony to wit: the murder of Patrick A. Doe. (Code Ann. § 27-2534.1(b)(2); and (2) The offense of murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture and depravity of mind. The evidence supports the jury's findings of these two statutory aggravating circumstances.

Further, this court finds that the sentence of death imposed in Count 2 was not imposed under the influence of passion, prejudice or any other arbitrary factor.

We find also, that the trial court's instructions to the jury during the sentencing phase of the trial are not subject to the defects addressed in *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977) and *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977).

Finally, we have considered the cases appealed to this

court since January 1, 1970, in which death or life sentences were imposed and find the similar cases listed in the appendix support the affirmance of the death penalty in this case. Joseph H. Mulligan's sentence to death is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed with direction. All the Justices concur.*

ARGUED SEPTEMBER 18, 1979 — DECIDED FEBRUARY 20, 1980.

*Jay William Fitt,* for appellant.
*William J. Smith, District Attorney, Arthur K. Bolton, Attorney General, Daryl A. Robinson, Assistant Attorney General,* for appellee.

APPENDIX.

*Westbrook v. State,* 242 Ga. 151 (249 SE2d 524) (1978); *Alderman v. State,* 241 Ga. 496 (246 SE2d 642) (1978); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441) (1973); *Morgan v. State,* 231 Ga. 280 (201 SE2d 468) (1973); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 700) (1975); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Douthit v. State,* 239 Ga. 81 (235 SE2d 493) (1977); *Gaddis v. State,* 239 Ga. 238 (236 SE2d 594) (1977); *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977); *Thomas v. State,* 240 Ga. 393 (242 SE2d 1) (1977).